JASON A. DUNN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1111
Jason.Dunn@usdoj.gov

JESSICA WILKERSON
Legal Counsel
State of Montana
Department of Environmental Quality
PO Box 200901
Helena, MT 59620-0901
(406) 577-6389
Jessica.Wilkerson@mt.gov

MARK STEGER SMITH
Civil Chief
District of Montana
2601 2nd Avenue North, Suite 3200
Billings, MT 59101
(406) 247-4667
Mark.Smith3@USDOJ.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

UNITED STATES OF AMERICA,

and

STATE OF MONTANA,

       Plaintiffs,

    v.

ATLANTIC RICHFIELD COMPANY
and ARCO ENVIRONMENTAL
REMEDIATION, LLC,

       Defendants.

Civil Action No. CV 23-50-GF-BMM

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Montana, by and through the office of the Attorney General (hereafter "State"), at the request of the Montana Department of Environmental Quality ("MDEQ"), file this Complaint and allege as follows:

### NATURE OF ACTION

1. This is a civil action against Defendants Atlantic Richfield Company and ARCO Environmental Remediation, LLC ("Defendants"), pursuant to Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and 9613, and the Montana Comprehensive Environmental Cleanup Act ("CECRA"), Sections 701 through 757, Mont. Code Ann. §§ 75-10-701 through 757.

2. Pursuant to Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), the United States and State seek injunctive relief and recovery of response costs that have been and will be incurred through conducting response activities in connection with the release or threat of release of hazardous substances at the ACM Smelter and Refinery Site in Cascade County, Montana

2

("Site"). In addition, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States and State also seek a judgment declaring that the Defendants are liable for any future response costs to be incurred because of releases or threatened releases of hazardous substances at or in connection with the Site.

3.      Further, the State, pursuant to Sections 711, 715, and 722 of CECRA, Mont. Code Ann. §§ 75-10-711, 715, and 722, seeks to abate an imminent and substantial endangerment to the public health, safety, and welfare and the environment posed by the facility, and to recover response costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action and over Defendants, pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606(a), 9607, and 9613(b). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 9613(b), because the Site is located, the claims arose, and the threatened and actual releases of hazardous substances that gave rise to the claims occurred, within this judicial district.

## GENERAL ALLEGATIONS

6.      Defendant Atlantic Richfield Company ("AR") is a Delaware corporation doing business in the State of Montana and is the successor to the Anaconda Copper Mining Company and related entities, which owned and operated smelting and refining facilities that were a source of hazardous substances that contaminated the Site. AR is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and Section 701(16) of CECRA, Mont. Code Ann. § 75-10-701(16).

7.      AR is a person, or successor to a person, who at the time of disposal of a hazardous substance owned and/or operated a facility at which hazardous substances were disposed and from which there were releases or threatened releases of hazardous substances, which caused the incurrence of response costs within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2), and CECRA Section 715(1)(b), Mont. Code Ann. § 75-10-715(1)(b).

8.      Defendant ARCO Environmental Remediation, LLC ("AERL") is a Delaware corporation doing business in the State of Montana. AERL is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and Section 701(16) of CECRA, Mont. Code Ann. § 75-10-701(16).

4

9.      AERL is a person who is a current owner and/or operator of a facility from which there were releases of hazardous substances, or threatened releases of hazardous substances, which caused the incurrence of response costs, within the meaning of CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1), and CECRA Section 715(1)(a), Mont. Code Ann. § 75-10-715(1)(a).

10.      The Site, consisting of approximately 427 acres, is adjacent to the unincorporated community of Black Eagle and located on the north bank of the Missouri River, north of the Great Falls city center in Cascade County, Montana.

11.      The Site is the location of a former copper concentrating and smelting facility referred to, after operations shifted to an emphasis on metal refining, as the Great Falls Refinery. Site operations began in the 1890s and expanded over the years to include smelting and refining of copper and zinc, and production of other specialty metals, which continued for more than 80 years. Primary products and wastes from activities at the Site included copper, zinc, arsenic, lead, and cadmium.

12.      The Site is a "facility," within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), and CECRA Section 701(4), Mont. Code Ann. §75-10-701(4).

13.     At times relevant to this action, there have been "releases" and "threatened releases" of "hazardous substances" from the Site property into the environment, within the meaning of CERCLA Sections 101(14), 101(22), and 107(a), 42 U.S.C. §§ 9601(14), 9601(22) and 9607(a), and within the meaning of "hazardous or deleterious substance" and "release" found in CECRA at Sections 701(8) and 701(19), Mont. Code Ann. § 75-10-701(8) and (19).

14.     The United States has incurred "response costs" relating to the Site within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), responding to releases and threatened releases of hazardous substances from the Site. The Unites States will continue to incur response costs in connection with the Site.

15.     The State has incurred and will continue to incur response costs, within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), and remedial action costs within the meaning of CECRA Section 701(23), Mont. Code Ann. § 75-10-701(23) to respond to these releases or threatened releases. These costs include, but are not limited to, costs incurred and to be incurred for removal and remedial actions, for planning, legal, or other activities necessary or appropriate to plan, direct, and support response actions, for recovery of the costs of response actions, administration, investigation, and for legal or enforcement purposes.

6

16.    The response costs were incurred by the United States and State in a manner not inconsistent with the National Contingency Plan, which was promulgated under CERCLA Section 105(a), 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

17.    Due to the releases of hazardous substances into the environment from the smelting, refining, and other industrial operations at the Site, EPA placed the Site on the National Priorities List set forth at 40 C.F.R. Part 300, Appendix B, in 2011. 76 Fed. Reg. 13,089 (Mar. 10, 2011). The Site is also listed on the Montana CECRA Priority List.

18.    In April 2011, EPA, MDEQ, and Defendants initiated negotiations for performance of a Remedial Investigation and Feasibility Study ("RI/FS") at Operable Unit 1 ("OU1") of the Site.

19.    For purposes of the Remedial Investigation, OU1 was divided into the following five sub-areas: Northern Community Soils Area of Interest; Southern Community Soils Area of Interest; Northern Outlying Area; Southern Outlying Area; and the Railroad Corridor.

20.    Defendants completed a Remedial Investigation for four sub-areas of OU1 (the Northern/Southern Community Soils Areas of Interest and the Northern/Southern Outlying Areas, collectively, "Community Soils") at the Site on August 6, 2015, and a Feasibility Study for the Community Soils

portion of OU1 at the Site on October 4, 2017, in accordance with 40 C.F.R. §

300.430.

21.    EPA selected a remedial action to be implemented at OU1 of the Site,

which is embodied in a final Record of Decision ("OU1 Record of Decision"),

executed on August 23, 2021, on which the MDEQ, on behalf of the State, has

given its partial concurrence.

22.    The OU1 Record of Decision identifies distinct remedies for the

Community Soils and the Railroad Corridor portions of OU1, to address human

health risks from lead and arsenic in residential and non-residential soils within the

community of Black Eagle, and in soils associated with the Railroad Corridor.

Section CS12 of the OU1 Record of Decision describes the selected remedy for

the Community Soils portions of OU1, which generally includes removing and

replacing contaminated soils from current residential properties in the Northern

and Southern Community Soils Areas of Interest and in the eastern portion of the

Northern Outlying Area.

**FIRST CLAIM FOR RELIEF**
(Recovery of Response Costs)

23.    Paragraphs 1 through 22 are re-alleged and incorporated by

reference.

8

24.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in part

that:

(1) the owner and operator of a vessel or a facility, [or]
(2) any person who at the time of disposal of any hazardous substance
owned or operated any facility at which hazardous substances were disposed
of, [and]
(4) . . . from which there is a release, or a threatened release which causes
the incurrence of response costs, of a hazardous substance, shall be liable
for --
        (A)  all costs of removal or remedial action incurred by the United
              States Government or a State . . . not inconsistent with the
              national contingency plan[.]

25.     Section 715 of CECRA, Mont. Code Ann. § 75-10-715(1)(a) and

(b) and (2), similarly allows the State to recover "all remedial action costs

incurred by the State," from liable parties.

26.     Defendants are within the class of persons described in Section

107(a)(1) and (a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (a)(2), and

Sections 715(1)(a) and (1)(b) of CECRA, Mont. Code Ann. § 75-10-715(1)(a)

and (1)(b), because Defendants own and/or owned and operated at the time of

disposal a facility from which there was a release or threatened release of a

hazardous substance.

27.     Defendants are jointly and severally liable to the United States and

State for costs of response and remedial actions taken or that will be taken at

the Site, including, *inter alia*, enforcement costs and interest authorized under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

28.    Defendants are jointly and severally liable to the State for costs of response and remedial actions taken or that will be taken at the Site under Sections 715 and 722 of CECRA, Mont. Code Ann. §§ 75-10-715(1)(a) and (b) and (2), and 722(2) and (5).

## SECOND CLAIM FOR RELIEF
(Injunctive Relief—Performance of Response Actions)

29.    Paragraphs 1 through 28 are re-alleged and incorporated by reference.

30.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

31.    By Executive Order 12850 dated January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), have been delegated to the Administrator of EPA.

10

32.     Section 711(8) of CECRA, Mont. Code Ann. § 75-10-711(8), authorizes the State to bring an action in the district court in the county where a release occurred as necessary to "abate any imminent and substantial endangerment to the public health, safety, or welfare or to the environment resulting from the release or threatened release" of hazardous or deleterious substances.

33.     EPA and MDEQ have determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from the Site.

34.     EPA and MDEQ have determined that the remedy selected in Section CS12 of the OU1 Record of Decision is necessary to abate the danger or threat at or from the Site.

35.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and CECRA Section 711(8), Mont. Code Ann. § 75-10-711(8), Defendants are liable for injunctive relief to undertake the remedial action identified in Section CS12 of the OU1 Record of Decision, which action EPA and MDEQ have determined to be necessary to abate the danger or threat at or from the Site.

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

36.     Paragraphs 1 through 35 are re-alleged and incorporated by reference.

37.     Section 113(g)(2)(B) of CERCLA, 42, U.S.C. § 9613(g)(2)(B)

provides, in part:

> In any such action . . . [for recovery of the costs referred to in section 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

38.     Section 722(5) of CECRA, Mont. Code Ann. §75-10-722(5),

provides, in part:

> An action to recover remedial action costs and interest may be brought under this section at any time after any remedial action costs and interest have been incurred, and the court may enter a declaratory judgment on liability for remedial action costs and interest that is binding on any subsequent action or actions to recover further remedial action costs and interest.

39.     An actual, justiciable, and legal controversy now exists between

MDEQ and Defendants. Accordingly, MDEQ seeks a judicial declaration of its

rights and legal relations with respect to Defendants pursuant to Mont. Code Ann.

§ 75-10-722(5) and the Uniform Declaratory Judgments Act ("UDJA") at Mont.

Code Ann. §§ 27-8-101 through 27-8-303.  MDEQ requests an award of costs of

this action, pursuant to Mont. Code Ann. § 27-8-311.  MDEQ is entitled to recover

costs of this action, including attorneys' fees as remedial action costs, against Defendants.

40.    Because response work is ongoing, the United States and State will continue to incur response costs at or in connection with the Site in the future.

41.    Defendants are subject to a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 722(5) of CECRA § 75-10-722(5), and Section 311 of UDJA, Mont. Code Ann. § 27-8-311, on liability for response costs that will be binding on any subsequent actions to recover further response costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United States of America and the State respectfully request that the Court:

A.    Order Defendants to perform the injunctive relief necessary to remedy conditions in connection with the release or threatened release of hazardous substances at the Site, including the remedy set forth in Section CS12 of the OU1 Record of Decision;

B.    Enter judgment in favor of the United States and against Defendants, jointly and severally, for response costs incurred by the United States, including prejudgment interest, in connection with the above-described response actions relating to the Site, and order Defendants to pay such costs and interest;

13

C.      Enter judgment in favor of the State and against Defendants, jointly and severally, for response and remedial action costs incurred by the State, including prejudgment interest, in connection with the above-described response and remedial actions relating to the Site, and order Defendants to pay such costs and interest;

D.      Enter a declaratory judgment of liability against Defendants, jointly and severally, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.S. 9613(g)(2), and Section 722(5) of CECRA, Mont. Code Ann. § 75-10-722(5), and Section 311 of UDJA, Mont. Code Ann. § 27-8-311, that will be binding on any subsequent action or actions to recover further response costs incurred by the United States or the State in connection with the Site;

E.      Award the costs of this action to the United States and the State; and

F.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

14

*/s/ Jason A. Dunn*
JASON A. DUNN
Senior Attorney, VA Bar #42730
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1111
Email: Jason.Dunn@usdoj.gov

JESSE LASLOVICH
United States Attorney
District of Montana

*/s/ Mark Steger Smith*
MARK STEGER SMITH
Civil Chief
District of Montana
2601 2nd Avenue North, Suite 3200
Billings, MT 59101
(406) 247-4667
Email: Mark.Smith3@USDOJ.gov


**FOR THE STATE OF MONTANA**

*/s/ Jessica Wilkerson*
JESSICA WILKERSON
Legal Counsel
State of Montana
Department of Environmental Quality
PO Box 200901
Helena, MT 59620-0901
(406) 577-6389
Email: Jessica.Wilkerson@mt.gov